

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 1:12cr357 (LMB) |
| | ) 1:13cv1593 (LMB) |
| ABOUBACAR DJIKINE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is Aboubacar Djikine's ("Djikine" or "movant") pro se Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255, in which he argues that he received constitutionally ineffective assistance of counsel. Specifically, Djikine argues that his counsel did not object to his being sentenced in absentia, failed to pursue a three-level reduction to his offense level for acceptance of responsibility, coerced him into entering an involuntary guilty plea, and failed to act on an opportunity for a safety-valve adjustment. Because none of movant's claims are supported by the record, no response from the government is required, and the § 2255 motion will be summarily dismissed.[1]

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior

I.   BACKGROUND

On August 7, 2012, a grand jury indicted movant and co-defendant Ousmane Diallo on multiple felony counts, all relating to the illegal sale of untaxed cigarettes and a conspiracy to distribute 500 or more grams of cocaine. [Dkt. No. 19] Peter Goldman ("Goldman") was appointed to represent movant, who entered a written plea agreement and pleaded guilty on October 11, 2012, to Count 2 of the indictment; in return, the government moved to dismiss the four remaining counts. [Dkt. Nos. 36, 38-39] Count 2 alleged a conspiracy to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 846, a crime which carried a mandatory minimum sentence of five years and a maximum possible sentence of 40 years, among other penalties. Although movant had no criminal history and would otherwise have been safety-valve eligible, his lack of candor in providing to the government all the information he had about the offense led to a denial of such an adjustment. [Dkt. Nos. 48, 51] Accordingly, he was sentenced on January 18, 2013, to the mandatory minimum sentence of five years of imprisonment with credit for time served, to be followed by four years of supervised release. [Dkt. No. 59] Movant did not file an

---

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

2

appeal, but he has timely filed this § 2255 motion. [Dkt. No. 66]

## II.   DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 442, 428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck,

23 F.3d 888, 891-92 (4th Cir. 1994) (applying standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral attack on his conviction or sentence. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

### B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Djikine must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant resulting from that deficient performance. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." Id. at 689. Moreover, Djikine must make an additional showing that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also id. ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). In this context, where movant pleaded guilty to the offense charged, that means "a

4

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would instead have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

### 1. Absence at Sentencing

Djikine first claims that his counsel failed "to argue or object when the Court sentenced him in absencia [sic]." Mot. to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 & Mem. of Law in Supp. ("Mot. to Vacate Sentence") 7. This cannot be squared with the record. The transcript of the sentencing hearing clearly shows that movant was, in fact, present throughout the entire sentencing hearing. See Tr. of Sentencing Hr'g ("Sentencing Tr."). The only event that occurred outside of the courtroom was the signing of a Restitution Order, which movant had agreed to sign as part of his plea agreement. Even then, the restitution obligation was imposed in movant's presence during the sentencing hearing, and satisfaction of that obligation was made a condition of supervision. As the transcript demonstrates, movant asked the Court two specific questions about his restitution obligation:

> THE COURT: But, Mr. Djikine, do you understand as part of your plea, you had agreed to, along with the codefendant, Diallo, to make restitution, that is, to pay back to the various victims of this scheme, and the amount of money that's involved here is $423,720? Do you understand that? Have you not -- had you discussed that with Mr.

5

Goldman?

THE DEFENDANT:  Yes.

THE COURT:  All right, so I'm going to make as an additional condition of supervision that you make a good faith effort to fulfill that restitution obligation.  Now, that restitution is due immediately, and the Bureau of Prisons will be taking money from your prison resources to satisfy that amount, but if it has not been fully paid -- and I doubt it would be -- before you finish your prison sentence, then as a condition of supervision, you are required to pay a minimum of $200 a month starting 60 days from the date you are released from custody.
Do you understand that?  And as long as you're making those minimum monthly payments, you will not be in violation of supervised release.

THE DEFENDANT:  How much again?

THE COURT:  $200 a month minimum.

THE DEFENDANT:  And how long would that be?

THE COURT:  Until it's paid.  When the supervision -- when the four years of supervision is over, then if there's still money owing, the federal government will have ways of going after you to try to get that money if you're still in the United States for any reason.

MR. GOLDMAN:  It's okay.

THE DEFENDANT:  Yes, okay.

Sentencing Tr. 9:15-10:19.

Because the physical Order was not in the courtroom at the time, the Court further directed counsel, the interpreter, and movant to meet in the cell block where movant could sign the Order once it was produced, which amounted to a mere formality given the discussion at sentencing.  In any event, it is an

6

obvious proposition that defendants may sign such orders outside the courtroom without being "sentenced in absentia." For these reasons, there is no basis for finding that movant was sentenced in absentia, nor is there an indication of any deficient performance on the part of counsel in connection with the imposition of restitution. Therefore, movant's first claim will be dismissed.

### 2. Counsel's Failure to Argue for Acceptance of Responsibility

Djikine next claims that his counsel "was deficient in not strongly" arguing that he was entitled to a three-level reduction to his offense level for acceptance of responsibility. Mot. to Vacate Sentence at 10-11. Again, the record contradicts movant's claim. To begin, counsel did ask the Court for a reduction to the offense level for acceptance of responsibility. In a memorandum submitted in advance of sentencing, counsel stressed that movant had pleaded guilty promptly and that his plea led a co-defendant to plead guilty as well. See Def.'s Resp. to the Presentence Report & Mem. in Supp. of Sentencing ("Sentencing Mem.") 1-2. Counsel even argued that movant should receive separate two-point reductions based on his safety-valve eligibility and minor role in the conspiracy. Id. Counsel repeated these arguments during the sentencing hearing and further suggested that movant deserved a sentence below the

five-year mandatory minimum. Sentencing Tr. 4-5. More importantly, the record shows that movant did in fact receive the same three-level reduction he argues his counsel failed to pursue. See Presentence Investigation Report ("PSR") ¶ 33; see also PSR, Worksheet D (reducing Djikine's Offense Level from 26 to 23). Accordingly, this claim is meritless and will be dismissed.

### 3. Counsel's Inadequate Advice in Connection with Movant's Guilty Plea

Djikine's third claim is that counsel promised him a sentence of 30-45 months upon pleading guilty to the cigarette charge, which counsel suggested movant could not beat, even though counsel at the same time suggested movant could "easily beat" the cocaine conspiracy charge. See Mot. to Vacate Sentence at 12-13. Movant goes on to argue that "had he known that he [would] receive more than" the promised 30-45 months, "he wouldn't have agreed to plead guilty but [would] have proceeded to trial." Id. at 14-15.

Once more, the record contradicts movant's claim that he was promised a sentence of 30-45 months. The transcript of his plea colloquy shows that movant was fully aware of the five-year mandatory minimum sentence he faced under the written plea agreement. First, during the colloquy, under an affirmation to tell the truth, movant acknowledged that he had at least a

partial college education, that he had asked counsel all the questions he had about the plea agreement, and that he had no questions for the Court. See Tr. of Change of Plea Hr'g ("Plea Tr.") 7:6, 9:8-16. Second, movant admitted that the written plea agreement represented his entire agreement with the government and that he was pleading guilty to Count 2, which charged him with conspiracy to distribute 500 grams or more of cocaine and exposed him to a mandatory minimum sentence of five years in prison (with a possible maximum term of 40 years). Id. at 11:2-20. Third, movant confirmed that counsel had explained to him how the guidelines would work when it came time for sentencing, id. at 13:7-20, that his ultimate sentence would be determined by the Court regardless of what his counsel might have told him about a possible sentence, id. at 15:16-21, and that a sentence differing from what he expected or hoped for would not provide a basis to withdraw his guilty plea, id. at 15:22-16:3. Fourth, movant assured the Court that he had told counsel everything he knew about the case, that counsel had discussed the nature of the drug conspiracy, and that counsel had explained any way in which movant could defend against the charge. Id. at 21:7-13. Finally, movant went so far as to answer "yes, very much" when asked directly whether he was satisfied with counsel's representation. Id. at 21:14-16.

Further contradicting the unsupported assertions in

9

Djikine's § 2255 motion, his counsel informed the Court that a plea to Count 2 was the only plea ever offered by the government:

> THE COURT: [W]ere there any other versions of a plea agreement offered to you during the course of the case?
>
> MR. GOLDMAN: No, Your Honor.
>
> THE COURT: Ms. Bellows [Assistant United States Attorney], is that correct?
>
> MS. BELLOWS: That is correct, Your Honor.
>
> THE COURT: So the offer was always to Count 2?
>
> MS. BELLOWS: Yes.

Id. at 25:16-23.

When a movant claims he received constitutionally ineffective assistance following a guilty plea, any statements he made during the plea colloquy are binding absent "clear and convincing evidence" that the plea was not entered knowingly and voluntarily, see Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) (citing Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992)), including statements made about satisfaction with counsel's performance. Djikine therefore cannot back away from the statements made during his extensive colloquy with the Court. Moreover, complaints that counsel provided inaccurate predictions about the sentence are routinely rejected as a legitimate basis for an ineffective assistance claim. See e.g.,

United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995); see also United States v. Lambey, 974 F.2d 1389, 1395-96 (4th Cir. 1992) (rejecting a claim from defendant who received a 360-month sentence even though counsel had assured him he would get 78-108 months).

In light of movant's many gross misrepresentations of the record, and clear evidence that the Court advised movant of the sentencing implications of his guilty plea, there can be no doubt that movant entered his plea knowingly and voluntarily, and that he received constitutionally effective assistance in doing so. For these reasons, this claim will be dismissed.

4. Counsel's Failure to Get Movant a Second Chance to Cooperate

Djikine again misstates the record in his fourth and final claim, in which he argues that counsel failed to follow-up when the Court allegedly "ordered the prosecutor to give petitioner a second chance by arranging for the agents to meet him again for de-briefing so that he [would] get another opportunity to cooperate with the government and get his sentence reduced." Mot. to Vacate Sentence at 15.

After movant was sentenced and returned to the cell block, the record shows that the prosecutor and defense counsel returned to the courtroom to present the signed Restitution Order. In a brief discussion, the Court probed whether a Rule

11

35 motion might be forthcoming; however, the Court never ordered the prosecutor to further debrief movant, and the prosecutor clearly indicated that she was not interested in any further meetings with movant:

> THE COURT: The only reason that I mention it is again, I think there should be some analysis of the cost/benefit of keeping, you know, someone like Djikine in prison for five years. I mean, he got the mandatory minimum, but if you feel that it's appropriate to file a Rule 35 even though he didn't get safety valve, you still have that option.
>
> MS. BELLOWS: Right. I think it's difficult in this case, Your Honor, given the statements that he's made, and based on, as the Court is aware of, what I put in our position on sentencing it just -- his statement makes absolutely no sense, and he made many of those statements to this Court at the time of the plea, and I think he has --
>
> THE COURT: That's all right.
>
> MS. BELLOWS: He's pretty much closed the door on that.
>
> THE COURT: All right, that's fine.

Sentencing Tr. 15-16. Because counsel did not fail to heed an order of the Court, this claim will be dismissed.

### III. CONCLUSION

Throughout his § 2255 Motion movant has grossly misrepresented what actually happened in the relevant court proceedings. These misrepresentations undermine the reliability of the averments in his affidavit. Accordingly, the Court finds no basis upon which to conduct an evidentiary hearing and

12

concludes that movant's claims are meritless for the reasons stated above. The Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 [Dkt. No. 66] will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 17th day of January, 2014.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge